# **EXHIBIT B**

# **COMPLAINT TO TRANS UNION, LLC**

STATE OF MINNESOTA                                  **DISTRICT COURT**

COUNTY OF HENNEPIN                               **FOURTH JUDICIAL DISTRICT**

                                                              **Case Type: Civil/ General**

---

Samuel Zean,

                                                              File No. _____
                    Plaintiffs.

vs.

                                                              **COMPLAINT**

Comcast Broadband Security, LLC *d/b/a*
Comcast *d/b/a* Xfinity; Southwest Credit
Systems L.P.; Trans Union, LLC

                    Defendants.

---

PLAINTIFF, as and for his causes of action against the above-named Defendants, states and alleges

as follows:

## INTRODUCTION

1.      Plaintiff comes before this court as an individual attempting to seek redress for Defendants'

collection of a baseless debt. Plaintiff's case is simple: Plaintiff entered into a contract with

Defendant Comcast Broadband Security, LLC ("Comcast") for the provision of internet services.

The contracted internet service was not as agreed as millions of Americans have experienced.

Plaintiff asked for Comcast to correct its issues and provide service as agreed. In response, the

company charged Plaintiff additional money for a "service call" and began billing Plaintiff for the

rental of his own modem.

        Plaintiff repeatedly attempted to correct these billing errors and was repeatedly told by agents

of Comcast that the charges were indeed incorrect and that Plaintiff owed no money for equipment

rental or service calls. Despite this, Plaintiff's bill was never corrected, and Plaintiff continued to be charged and harassed for payment of money he did not owe.

In February of 2017, Defendant Comcast prematurely terminated Plaintiff's internet service. However, Comcast's administrative errors and collection efforts did not cease. Sometime thereafter, Plaintiff's allegedly delinquent account was sold, placed, or otherwise transferred to debt collector Southwest Credit System, L.P. ("Southwest Credit"), who began contacting Plaintiff for payment. Plaintiff asked the debt collector Southwest Credit to cease calling. However, the calls continued.

In May of 2017, Plaintiff checked his Trans Union, LLC ("Trans Union") credit report to find Comcast was reporting a delinquent account. Pursuant to his rights under the Fair Credit Reporting Act, Plaintiff disputed the incorrect tradeline. In his dispute Plaintiff provided a detailed explanation of the billing error together with documents proving the tradeline in question was incorrectly reported.  Despite this, the consumer reporting agency ("CRA") Trans Union affirmed Comcast's reporting as correct. Without further recourse available and having exhausted logical reasoning with Defendants, a frustrated Plaintiff comes before this court asking for just compensation and relief.

## STATEMENT OF JURISDICTION & VENUE

2.    This action arises out of Defendant(s)' violations of the Fair Credit Reporting Act ("FCRA"), violations of the Fair Debt Collection Practices Act ("FDCPA"), violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and violations of the common law of Minnesota.

3.    This Court has Jurisdiction over the subject matter of this action pursuant to Minn. Stat. §484.01.

4.     Venue is proper pursuant to Minn. Stat. §542.09 because the cause of action arose within the State of Minnesota and the County of Hennepin.

## PARTIES

5.     Plaintiff is an adult resident of Hennepin County, Minnesota.

6.     Defendant Comcast is a foreign corporation.

7.     Defendant Southwest Credit is a foreign limited partnership and a debt collector.

8.     Defendant Trans Union is a foreign limited liability company and a consumer reporting agency.

9.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant all Defendants conducted business in the State of Minnesota and in the County of Hennepin.

## FACTS

10.     On Wednesday, March 2, 2016, Plaintiff contracted with Defendant Comcast for internet service.

11.     The Internet Service Contract began on Monday, March 7, 2016 and was scheduled to end on March 7, 2017.

12.     Beginning in March 2016, Plaintiff experienced internet conductivity issues similar to those complained of by millions of other Comcast customers.

13.     The issue involved the Comcast service randomly dropping the internet connection with computers and other electronic devices connected to it.

14.     Once dropped, the computer or other device is prevented from connecting to the internet.

15.     This problem is referred to in the telecommunication industry as "intermittent drops".

3

16.    Many consumers and some individuals employed in the telecommunications industry believe that this issue is caused by deliberate actions of Comcast.

17.    Regardless of the accuracy of this claim, Plaintiff was experiencing the same problems with Comcast's service as were millions of other Comcast customers.

18.    After months of attempting to fix this issue, Plaintiff again called Comcast technical support sometime in August 2016.

19.    Comcast's technical support tried to remotely fix Plaintiff's issue with intermittent drops; however, the technical support team only made the issue worse.

20.    In fact, the team mistakenly disconnected Plaintiff's internet access completely.

21.    The team was unable to remotely restore the connection.

22.    Because Comcast's technical support was unable to fix the problem they had caused, they agreed to send a Comcast technician to Plaintiff's home to restore Plaintiff's connection.

23.    On August 27th, 2016, Comcast's technician came to Plaintiff's home, however the technician was unable to restore the service using Plaintiff's existing modem.

24.    The technician, therefore, removed the Plaintiff's modem and replaced it with a new modem, which Plaintiff was told he would have to rent from Comcast.

25.    Plaintiff used the rented modem from August 26, 2016 and returned it on September 5, 2016 after purchasing a new modem from Amazon.com.

26.    On September 5, 2016, Plaintiff began using his new modem; in order to do so, Plaintiff was required to give Comcast technical support his personal modem's Serial Number (XXXXX6824) and Modem Model Number (DCP3008).

27.     Plaintiff obtained a receipt upon returning the modem which Plaintiff currently has in his possession.

28.     Sometime thereafter, Plaintiff reviewed his August 28, 2016 Comcast billing statement and immediately noted a charge of $70.00 for a "Residential Trouble Call" on August 27, 2016.

29.     On Plaintiff's August 28, 2016 billing statement, Comcast charged also Plaintiff $3.87 for Modem Rental from August 26 to September 6 instead of from August 26 to September 5.

30.     Plaintiff called Comcast and disputed the trouble call charge.

31.      The Comcast representative that he spoke with assured Mr. Zean that she had reversed the $70 charge and that Plaintiff's next billing statement would reflect the adjustment.

32.     Reviewing his subsequent account statement, Plaintiff noted that the Company did not reverse the entire $70, but only credited $35 to Mr. Zean's account.

33.     Plaintiff called back on or about September 9, 2016 and spoke with yet another Comcast representative, who also assured Plaintiff that she had reversed the charges for the remaining balance of $35.

34.     She reassured Plaintiff that he was not responsible for any charges related to the August 27, 2016 service.

35.     Plaintiffs account, however, was never credited for the $35 charge remaining on his account.

36.     On multiple occasions, all after September 9, 2016, Plaintiff contacted Defendant in writing to request the charges in question be removed.

37.   Plaintiff sent Comcast multiple letters via certified mail disputing the incorrect billing balance.

38.   Comcast never responded to Plaintiff's dispute letters.

39.   The company, however, continued to attempt collection of the disputed charges.

40.   In addition to continuing to bill $35.00 to remedy a situation caused by the company, Comcast began billing Plaintiff on a monthly basis for rental of his own modem.

41.   From August 28, 2016 to February 28, 2017, Plaintiff's monthly bill contained an unexplained $10.00 modem rental charge.

42.   Plaintiff repeatedly informed Defendant Comcast that he owned his modem and router and was not in fact renting this equipment from Defendant Comcast.

43.   Despite this, Defendants continued to attempt collection of modem rental charges of in the amount of $70.00 for an alleged modem rental occurring between August 28, 2016 and February 28, 2017.

44.   These rental charges, together with the $35.00 fee for the "Residential Trouble Call", totaled $105.00.

45.   In addition to these charges, in December 2016, Comcast charged a late fee of $9.50.

46.   Comcast charged another alleged late fee of $9.50 in January 2017.

47.   The account, therefore, totaled $124.00.

48.   Plaintiff called Comcast on or about September 20, 2017 to obtain the current balance demanded by the company.

49.     Plaintiff was informed that Comcast later added an unexplained charge of $4.14 and is currently attempting collection of $128.14 (the "Debt").

50.     During the same call Plaintiff spoke with a billing specialist who confirmed the calculation above was correct according to Comcast records.

51.     Plaintiff has repeatedly demonstrated that he does not owe Comcast the $128.14, but the company refuses to cease billing him.

52.     Sometime in 2017, Defendant Comcast sold, placed, or otherwise transferred the alleged debt to the debt collector Southwest Credit.

53.     Plaintiff repeatedly disputed this matter with Southwest Credit, but the debt collector has to date refused to respond to Plaintiff's request to investigate and correct the wrongful debt of $128.14.

54.     Both Comcast and Southwest Credit have placed calls to Plaintiff's cellular telephone using an automated telephone dialing system (hereinafter "ATDS").

55.     Plaintiff has repeatedly requested that the calls stop.

56.     Plaintiff has made these requests to both Comcast and Southwest via certified mail and verbally.

57.     Despite repeatedly requesting the calls to stop, both Comcast and Southwest Credit have continued to place automated debt collection calls to Plaintiff's cell phone.

58.     Plaintiff's cellular telephone number is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

7

59.    Plaintiff never provided Defendant Comcast or Southwest Credit with express consent to use an automatic telephone dialing system to call him.

60.    Despite this, Defendants Comcast and Southwest Credit have repeatedly called Plaintiff's cellular phone using an automated telephone dialing system as that term is defined by 47 U.S.C. § 227(a)(1).

61.    Comcast and Southwest Credit have called Plaintiff via ATDS at least 150 times after Plaintiff asked for the calls to stop.

62.    Defendants Comcast and Southwest Credit called Plaintiff's cellular telephone more than one hundred and fifty (150) times between November 21, 2016 and March 15, 2017.

63.    Plaintiff called Defendant Comcast in December 2016 and asked Defendant Comcast to top calling him using automated dialer.

64.    Defendant Comcast's representative refused and told Plaintiff that as long as Plaintiff owes Comcast, Comcast will continue to call Plaintiff with an automated dialer.

65.    On December 20, 2016, Plaintiff wrote to Defendant Comcast and once again asked Defendant to cease all communication in regards to the alleged debt and late charge collection effort.

66.    Defendant Comcast did not respond to Plaintiff's December 20 letter and continued to call Plaintiff with an ATDS.

67.    Plaintiff called Defendant Comcast again in January 2017 and spoke to a representative. When Plaintiff requested, for a third time, that Defendant stop placing automated debt collection

calls to his cell phone, Defendant's representative told Plaintiff that it was trying to collect the alleged debt and would not stop placing calls.

68.     Defendant's calls were not for emergency purposes.

69.     Defendants Comcast and Southwest Credit had no basis to believe that they had Plaintiff's prior express consent to use an automatic telephone dialing system to call his cellular telephone.

70.     Defendants Comcast and Southwest Credit violated 47 U.S.C. 227(b)(1)(A) by calling Plaintiff's cellular telephone using an automatic telephone dialing system.

71.     Sometime in 2017, Southwest Credit began reporting a damaging collection account for the alleged $128.14 debt on Plaintiff's Trans Union consumer file.

72.     Plaintiff immediately again contacted Comcast and Southwest Credit and again asked them to conduct an investigation into his claims.

73.     Neither Comcast nor Southwest Credit responded to Plaintiff.

74.      Plaintiff's credit report was never updated to indicate that Plaintiff disputed the charge of $128.14.

75.     As a result, Plaintiff wrote Trans Union and asked Trans Union to perform an investigation into Southwest Credit's negative tradeline.

76.     Trans Union responded that it had investigated the matter and had found that Southwest Credit's reporting was accurate with respect to the amount due.

77.     Plaintiff has been denied a credit card as a direct result of Southwest Credit's false reporting and Trans Union's refusal to conduct a reasonable investigation into Plaintiff's claims.

78.     As a debt collector, Southwest Credit was prohibited from giving false credit information about Plaintiff to a credit reporting company but did so anyway.

79.     In March 2017, Comcast sent some unknown person to Plaintiff's home post an embarrassing notice and demand for payment on Plaintiff's door.

80.     This notice was seen by Plaintiff's visitors, who brought the notice into Plaintiff's home and handed it to Plaintiff's mother-in-law.

81.     Comcast's notice falsely alleged that Plaintiff was delinquent and in default of returning Comcast's modem.

82.     Mr. Zean was highly embarrassed, ashamed, and humiliated by Comcast's unnecessary and unauthorized display of false private information to his visitors and others who had no business knowing about such information.

83.     On information and belief, Plaintiff alleges that Defendant knew that the disclosure or communication included defamatory remarks.

84.     Since August of 2016, Mr. Zean has suffered from stress directly stemming from Defendant's willful and malicious conduct.

85.     This stress is a natural consequence of Comcast's tortious behavior and patent refusal to correct its billing errors, coupled with continuous harassing phone calls from both Comcast and Southwest Credit.

86.     In fact, the stress on Mr. Zean has been so great that Mr. Zean has been diagnosed with a stress-triggered medical condition, hemicrania continua, resulting from the Defendants' intentionally unjust conduct.

87.     Mr. Zean has incurred medical bills, co-payments, and prescription medication payments all as a direct result of Defendants' conduct.

88.     Comcast's unchecked conduct has increased in aggressiveness.

89.     In light of what has transpired, Mr. Zean has justifiably avoided applying for additional credit until the inaccurate information is ultimately corrected on his credit report.

## CLAIMS

### First Claim for Relief

### Request for Declaratory Judgment

*Minn. Stat. § 555.01*

### Against Defendant Comcast

90.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint though fully stated herein.

91.     Plaintiff respectfully requests Declaratory Judgment that Plaintiff does not owe the alleged Debt.

### Second Claim for Relief

### Negligent Violations of the Telephone Consumer Protection Act

*47 U.S.C. § 227 Et Seq.*

### Against Defendants Comcast and Southwest Credit

92.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

93.     Plaintiff is informed and believes, and thereon alleges, that Defendants made phone calls to Plaintiff's cellular telephone via an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227 (a)(1).

94.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C.
§153 (39).

95.     Defendants are, and at all times mentioned herein were, "persons" as defined by 47
U.S.C. §153 (39).

96.     Plaintiff's telephone numbers are assigned to a "cellular telephone service" as that term is
used in 47 U.S.C. § 227 (b)(1)(A)(ii).

97.     On information and belief, Defendants Comcast and Southwest Credit utilized ATDS to
collect alleged debts from consumers.

98.     Plaintiff is familiar with ATDS equipment and thereon alleges that Comcast and
Southwest Credit called Mr. Zean's personal cell phone with ATDS equipment.

99.     Plaintiff bases his beliefs on the following facts:

   a.  During many calls, a pause or delay, whereby a representative was not
       immediately available, accompanied many of these calls.

   b.  On several occasions Defendant's auto-dialing system would dial Plaintiff;
       when Plaintiff answered these phone calls a representative was entirely
       unavailable, resulting in a period of dead air (hereinafter "dead air calls").

   c.  Some calls were accompanied by a prerecorded voice message.

100.    Plaintiff is informed and believes, and thereon alleges, that these telephone calls
constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227
(b)(1)(A)(i).

101.    The calls were made to Plaintiff's personal cell phone via ATDS without Plaintiff's prior
express consent.

102.    Defendants placed or caused to be placed these telephone calls in violation of 47 U.S.C.

§227 (b)(1).

103.    The foregoing acts and omissions of Defendants constitute numerous and multiple

negligent violations of the TCPA, including but not limited to each and every one of the above

cited provisions of 47 U.S.C. § 227 et seq.

104.    As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq, Plaintiff is

entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47

U.S.C. § 227(b)(3)(B).

105.    Plaintiff is also entitled to seek injunctive relief prohibiting such conduct in the future.

### Third Claim for Relief

### Knowing and/ or Willful Violations of the Telephone Consumer Protection Act

### *47 U.S.C. § 227 Et Seq.*

### Against Defendants Comcast and Southwest Credit

106.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

though fully stated herein.

107.    The foregoing acts and omissions of Defendants constitute numerous and multiple

knowing and/ or willful violations of the TCPA, including but not limited to each and every one

of the above-cited provisions of 47 U.S.C. § 227 et seq.

108.    As a result of Defendants' knowing and/ or willful violations of 47 U.S.C. § 227 et seq.,

Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00 for each and every

violation, pursuant to 47 U.S.C. § 227(b)( 3)(B) and 47 U.S.C. § 227(b)(3)(C).

**Fourth Count for Relief**

**Violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681e(b), 15 U.S.C.**

**§ 1681i(a)(1) and 15 U.S.C. § 1681 s-2(b)(1)**

*Against All Defendants*

109.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

110.    A consumer reporting agency (Again "CRA") is defined by the FCRA as follows:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

111.    Trans Union is a CRA as defined by the FCRA.

112.    Comcast and Southwest Credit are "furnishers" as that term is used in 15 U.S.C. § 1681s-2 of the FCRA.

113.    Section 617 of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act. 15 U.S.C. § 1681o.

114.    Section 616 of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. 15 U.S.C. § 1681n(a).

**Trans Union's Failure To Adopt and/or Follow Reasonable Procedures**

115.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

14

116.   On numerous occasions, Trans Union has supplied false consumer reports containing untrue derogatory information about Plaintiff Samuel Zean.

117.   Despite actual knowledge that Mr. Zean does not owe Comcast the amount of $128.14, Trans Union informed Mr. Zean's potential creditors that he has failed to pay his account and thereby affirmatively stated that Plaintiff is a potential credit risk.

118.   On each such instance, Trans Union willfully and /or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Mr. Zean in violation of Section 1681e(b).

119.   Through Mr. Zean's communications with Trans Union, Trans Union knows, or has sufficient reason to know, that when it prepares and sells a consumer report about Mr. Zean, the information it is circulating is inaccurate.

120.   Nevertheless, Trans Union has taken no measures to stop supplying false information about Mr. Zean.

121.   Mr. Zean remains unable to obtain credit cards or loans because of the inaccurate credit file maintained by Trans Union.

122.   Plaintiff has suffered out-of-pocket losses as a result of Trans Union's willful and/or negligent violations of the FCRA including, without limitation, denial of credit, a higher cost of borrowing, and premiums Mr. Zean and his wife must spend for a credit monitoring and dispute service.

123.   Plaintiff is not currently free to take advantage of various credit opportunities available to other consumers because of Trans Union's failure to supply accurate information about Mr. Zean.

124.    As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of credit, higher costs of borrowing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration, and embarrassment.

125.    The aforementioned damages entitle Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorney's fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

126.    Upon information and belief, Trans Union has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its responsibility to report accurate data on consumers.

127.    Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

128.    The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n(a)(2).

## Trans Union's Failure to Conduct Reasonable Reinvestigations

129.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1): The Act imposes a 30-day time limitation for the completion of such an investigation. Id.

16

130.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

131.    On multiple occasions, Mr. Zean has initiated disputes with Trans Union requesting that the CRA correct and /or delete the patently inaccurate tradeline furnished by Comcast and Southwest Credit.

132.    Plaintiff specifically advised Trans Union on numerous occasions that a mistake had been made, provided all necessary information to Trans Union to support same, and requested that his credit file be corrected accordingly (i.e., any references to Southwest Credit's inaccurate and false data be deleted).

133.    On information and belief, Trans Union conducted no investigation at all of Mr. Zean's disputes but instead fully relied on Comcast and /or Southwest Credit to perform such.

134.    On information and belief, neither Comcast and /or Southwest Credit performed such an investigation and instead parroted back a verification of the data.

135.    By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and /or negligently violated 15 U.S.C. § 1681i(a)(1) with respect to each dispute lodged by Plaintiff.

136.    As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial and loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration, and embarrassment entitling him to an award

17

of actual damages in amounts to be proved at trial, plus attorney's fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

## Southwest Credit Systems L.P. and Comcast's Failure to Conduct Reasonable Reinvestigations

137.    Furnishers of consumer information have a duty to conduct a reasonable investigation into a tradeline upon notice of a consumer dispute from a CRA. 15 U.S.C. § 1681s-2(b)(1).

138.    On or around June 21, 2017, Plaintiff contacted Trans Union to dispute the accuracy of the information being reported about him.

139.    Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), Comcast and Southwest Credit received notification of this dispute from Trans Union.

140.    At the time that Comcast and Southwest Credit received notice of Mr. Zean's credit bureau dispute, Comcast and Southwest Credit had already been contacted on numerous occasions by Mr. Zean.

141.    Mr. Zean had previously disputed the tradeline in question directly with Comcast and Southwest Credit.

142.    On information the belief, Comcast and Southwest Credit failed to conduct a reasonable investigation into the accuracy of information related to the disputed tradeline.

143.    Comcast and Southwest Credit also intentionally failed and refused to include a notice in Plaintiff's Trans Union credit file to indicate that the debt in question was disputed by Plaintiff.

144.    Comcast and Southwest Credit's failure to conduct a reasonable investigation of the accuracy of their reporting of this adverse information shows a reckless disregard for Plaintiff's rights under the FCRA.

145.    As a direct and proximate result of Comcast's and Southwest Credit willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration, and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

### Fifth Count for Relief

### Fair Debt Collection Practices Act (FDCPA)

### Against Defendant Southwest Credit

146.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

147.    Plaintiff is, and at all times mentioned herein was, a "consumer" as defined by 15 U.S.C. §1692a(3).

148.    Defendant Southwest Credit is, and at all times mentioned herein was, a "debt collector" as defined by 15 U.S.C. §1692a(6).

149.    The debt allegedly owed by Plaintiff is a "debt" as defined by 15 U.S.C. §1692 a(5).

150.    The calls mentioned herein constitute "communications" as defined by 15 U.S.C. §1692a(2).

151.    By failing to stop calling after being requested to do so, Defendants violated 15 U.S.C. § 1692d.

19

152.   By continuing to collect a debt known to be invalid, Defendant Southwest Credit violated 15 U.S.C. § 1692e.

153.   By furnishing false information to Trans Union, Defendant violated the same.

154.   By collecting an amount not authorized by law or contract, Defendant violated 15 U.S.C. § 1692f.

155.   By failing to validate the debt in question, Defendant violated 15 U.S.C. § 1692g.

156.   By failing to cease calling after timely notice of dispute, Defendant violated again violated 15 U.S.C. § 1692g.

### Sixth Claim for Relief

### Invasion of Privacy – Intrusion Upon Seclusion

### Against Defendants Comcast and Southwest Credit

157.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

158.   Defendants repeatedly and continuously called Plaintiff's cellular telephone to collect an alleged debt that Plaintiff did not owe.

159.   Defendants continued to place calls to Plaintiff's cellular telephone after Plaintiff made repeated requests that Defendants cease their calling.

160.   These calls were a constant, frustrating reminder to Plaintiff that Defendants disregarded Plaintiff's reasonable attempts to amicably resolve this matter.

161.   These calls were disruptive to Plaintiff in that they interfered with Plaintiff's daily activities.

162.   Defendant Comcast willfully and without authority trespassed onto Plaintiff's property for the purpose of posting a collection notice to Plaintiff's front door.

163.    Defendants placed over 150 automated calls to Plaintiff's cell phone.

164.    These calls occurred as often as four times a day every day for period of several months.

165.    Defendants thereby acted in an extreme and outrageous manner in their intrusion into Plaintiff's private life.

166.    Plaintiff suffered distress from Defendants' conduct, actions, and statements.

### Seventh Claim for Relief

### Invasion of Privacy – Publication of Private Facts

### Against Defendant Comcast

167.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

168.    Defendant Comcast distributed the untrue message that Plaintiff was delinquent, was in default, and was possession of Comcast's property.

169.    Defendant distributed this message by posting a document on Plaintiff's front door such that persons and visitors with no reasonable need to know the information were notified of Comcast's false accusation.

170.    Defendant Comcast made this distribution in violation of Defendant's own Code of Ethics and Business Conduct, which states the company strives to "preserve customers' confidentiality".

171.    Plaintiff had a reasonable expectation of privacy that Comcast would not publicly accuse Plaintiff of not paying his bill.

172.    Defendant's reckless disclosure of false confidential information resulted in injury to Mr. Zean's health and reputation.

167.   After the disclosure, Mr. Zean has experienced a panic attack and suffered anxiety and stress-triggered headaches.

168.   Mr. Zean continues to suffer from anxiety and constant headaches.

169.   Defendant's disclosure stigmatized Plaintiff within his community and resulted in shame, disgrace, dishonor, embarrassment, and humiliation.

## Eighth Claim for Relief

## Defamation

## Against Defendant Comcast

173.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

174.   Comcast posted a document alleging Plaintiff owed Defendant money.

175.   This document was seen by others.

176.   The statement contained in the document lowered Plaintiff's status in his tightly-knit community.

177.   Defendant Comcast is liable to Plaintiff for defamation damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Samuel G. Zean, by and through his attorney, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows in a sum greater than $50,000.00:

A) Declaratory judgment that Plaintiff does not owe the alleged Debt;

B) Actual damages in an amount to be proved at trial;

C) Statutory damages of $500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(B);

22

D) Statutory damages of $1,500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(C);

E) Statutory damages in an amount up to $1,000.00, pursuant to 15 U.S.C.

§1692k(a)(2)(A);

C) Statutory damages as provided for by 15 U.S.C. § 1681n(2);

D) Costs and attorney's fees as provided for by statute;

E) Such other and further relief as this Court deems just and proper.

Dated:10/10/2017                          Respectfully Submitted,

                                          MADGETT LAW

                                          s/ David J.S. Madgett
                                          David J.S. Madgett (#0390494)
                                          619 South Tenth Street
                                          Suite 301
                                          Minneapolis, MN 55404
                                          (612) 470-6529
                                          dmadgett@madgettlaw.com

                                          ATTORNEY FOR PLAINTIFF

### Acknowledgement

Plaintiff acknowledges that, pursuant to Minn. Stat. Sec. 549.21 sub. 2, the Court in its discretion may award costs, disbursements, reasonable attorney's fees and witness fees to the parties against whom costs, disbursements, reasonable attorney's fees and witness fees were charged in bad faith.

Dated: 10/10/2017                         By: /s/ David J.S. Madgett
                                          David J.S. Madgett
                                          ATTORNEY FOR PLAINTIFF

23