# Exhibit A

SCANNED

MAY 3 1 2018

U.S. DISTRICT COURT ST. PAUL

**To**    DM    David Madgett            Cc   Bcc

Add a subject

---

**From:** David Madgett <dmadgett@madgettlaw.com>
**Sent:** Tuesday, September 12, 2017 11:04 PM
**To:** Samuel Zean
**Subject:** $2500 From Equifax

Hi Samuel!

We have an offer that will net you $2500.00. I think this
is good considering that the miss reporting was not
material. We should take this and use the money to go
after Wells Fargo. Make sense?

**David J.S. Madgett**
Attorney



**Madgett Law  | www.madgettlaw.com**
619 South Tenth Street, Suite 301
Minneapolis, Minnesota 55404

(O) 612.470.6529
(C) 612.419.0589
(F) 888.588.1434
The information in this email may be confidential
and/or privileged and is intended to be seen only by the
intended recipient.  If you are not the intended, above-
named recipient, you are hereby notified that any
review, copying, or dissemination of this message is
prohibited.  If you have received this message in error,
please notify the sender by return email and delete the
message from your system.

# Exhibit B

# Zean v. Wells Fargo et. al.

# SETTLEMENT DISTRIBUTION

| | |
|---|---|
| **Agreed Settlement Amount** | $ 2,500.00 |
| Attorneys' Fees Negotiated pursuant to fee shifting under 15 U.S.C. § 1681 | $ 4,0000.00 |
| Less: Attorneys' Costs to date | Waived (0.00) |
| **NET TO CLIENT** | $ 2,500.00 |

I do hereby approve of the above distribution of the settlement funds. I am not aware of any liens upon my settlement. If there are any existing liens and/or medical bills or if they are later asserted, I understand that I am fully responsible for such liens and/or medical bills from the proceeds of my settlement. I further hold harmless and indemnify Madgett Law, LLC and its employees from any possible liens and/or medical bills.

I acknowledge that my said attorneys have retained the sums indicated above for attorneys' fees and for attorneys' costs advanced on my behalf.

I further acknowledge that my claim has been handled pursuant to my direction and to my satisfaction. Madgett Law, LLC represents that this settlement was is negotiated on behalf of a legal assistance company dedicated to serving low to moderate income individuals. Client approved the net to client prior to entering into the settlement agreement. Madgett Law negotiated its fee under statutory fee shifting laws and without direct input from the client.

I also acknowledge that I have been advised to seek the assistance of a tax professional in regard to the tax implications that this settlement may have on my income taxes.

DATED: ___10 / 2 / 17___

_____
Client Name

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

SAMUEL ZEAN AND EUNICE ZEAN,

*Plaintiffs,*

v.

Equifax Information Services LLC,

*Defendant*

**SETTLEMENT AGREEMENT
AND RELEASE**

---

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into by Samuel Zean and Eunice Zean ("Plaintiffs") and Equifax Information Services LLC ("Equifax") as of September 18, 2017.  Equifax is referred to herein as the "Defendant." Plaintiffs and Defendant are collectively referred to herein as the "Parties."

## FACTS

Plaintiffs filed the above-captioned lawsuit in the United States District Court for the District of Minnesota ("the Lawsuit").  Plaintiffs allege that Defendant is liable for violations of the Fair Credit Reporting Act and inaccuracies associated with Plaintiffs' credit reports published prior to the execution of this Agreement ("the Credit Reports").

The Parties now desire to resolve all disputes, asserted or unasserted and arising out of, any acts, failures to act, omissions, misrepresentations, facts, events, transactions, or occurrences described in the Lawsuit or related to the Credit Reports.

NOW THEREFORE, in consideration of the mutual promises, terms, and conditions contained herein, and for other good and valuable consideration hereby deemed received, the Parties agree as follows:

## TERMS OF AGREEMENT

1.     Defendant agrees to the total settlement amount of Six Thousand Five Hundred Dollars ($6,500.00).  The settlement check shall be made payable to Madgett Law, attorney for Plaintiffs.

2.     Within five days of execution of this Agreement, Plaintiffs agree to file a Motion to Dismiss with Prejudice, and proposed Order, or to file such other papers as are necessary to dismiss with prejudice Plaintiffs' claims against Defendant.  Plaintiffs further agree to provide immediately to Defendant's attorneys copies of all such papers.

3.     Except for the rights and obligations created by this Agreement, Plaintiffs and Plaintiffs' heirs, agents, privies, attorneys, insurance carriers, executors, administrators, and successors and assigns, hereby release and forever discharge Defendant and its agents, affiliates, servants, employees, officers, directors, shareholders, attorneys, privies, insurance carriers, predecessors, parents, subsidiaries, successors, and assigns from any and all debts, controversies, claims, demands, damages, actions, causes of action or suits of any kind or nature, including by contract, tort, statute, or otherwise, known or unknown, now existing and up to the date on which Plaintiffs sign this Agreement including, without limitation, any obligations under the Fair Credit Reporting Act.  This Agreement necessarily includes, but is not limited to, any and all claims, demands, damages, actions, causes of action or suits which are based directly or indirectly upon facts, events, transactions or occurrences related to or alleged, or embraced by the Lawsuit or the Credit Reports.

4.     The Parties further agree that this Agreement has been fully read and understood by them, and that each of them has received independent legal advice from their respective attorneys as to the effect and import of its provisions.  The Parties further agree that this Agreement is being entered into for the express purpose and intention of making and entering

2

into a full and final compromise, adjustment and settlement of all claims which were or could have been asserted in the Lawsuit, whether or not referred to therein.

5.      Plaintiffs warrant and represent that there has been no assignment, sale or transfer, by operation of law or otherwise, of any claim, right, or interest released herein.  Plaintiffs agree to indemnify, defend and hold harmless Equifax from any claim, liability, or expense which may be incurred as a result of the assertion of any such claim, right, or interest by any person by reason of any such assignment, sale or transfer.

6.      This Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of Defendant of any claim or any fault or liability or damages whatsoever.  Defendant denies any and all wrongdoing of any kind whatsoever in connection with the Lawsuit and does not concede any infirmity in the defenses that each asserted or intended to assert.  The Parties have reached the agreement reflected herein in order to avoid further expense, inconvenience and delay, and to dispose of extremely expensive, burdensome, and protracted litigation.

7.      Without limiting the generality of the foregoing, Plaintiffs acknowledge that collectively attached hereto as Exhibit A are Plaintiffs' Equifax Consumer Credit Report as of September 27, 2017.  Plaintiffs hereby agree that Plaintiffs will not initiate any legal action against Equifax based on the information currently contained in Exhibit A, and that Equifax may publish such information in the normal course of its business pursuant to the Fair Credit Reporting Act and any other applicable federal and/or state laws.

8.      The Parties agree that this Agreement constitutes a good faith settlement of the Lawsuit and acknowledge that it is entered into freely and voluntarily.

3

9.      Unless otherwise required by law or court order, Plaintiffs agree to keep this Agreement confidential, except when necessary to assert a due legal right, or when Plaintiffs' accountants or attorneys are privy to its contents in confidential communications.  In the event Plaintiffs are forced to file this Agreement with a court, they shall do so under seal so that the contents are not revealed beyond disclosure to duly authorized court personnel such as judges and court clerks or to taxing authorities, if necessary, or as otherwise ordered by the Court.

10.     This Agreement constitutes the sole and entire agreement between Plaintiffs and Equifax, and supersedes all prior agreements, negotiations, and discussions between the Parties, with respect to the subject matter covered in it.  Plaintiffs and Equifax each acknowledge that, in entering into this Agreement, they are not relying upon any representations or warranties made by anyone other than those terms and provisions expressly set forth in this Agreement.  It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of Plaintiffs and Equifax, respectively.  The Parties further acknowledge and agree that they will make no claims at any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever.

11.     This Agreement is being made in and shall be deemed to be performed in the State of Minnesota and shall be governed by, construed, and enforced in accordance with the laws of the State of Minnesota without giving effect to the provisions, policies, or principles thereof relating to choice of law or conflict of laws. Each of the Parties hereby consents to the jurisdiction of the federal courts located in the State of Minnesota with respect to any dispute relating to or arising out of this Agreement.

12.   In any action to enforce the terms of this Agreement, including any action to recover damages for any violations of it, including the confidentiality provisions of paragraph 9 above, the prevailing party shall be entitled to recover its reasonable attorneys' fees and disbursements in addition to costs of suit.

13.   Should any provision of this Agreement be held invalid or illegal, such invalidity or illegality shall not invalidate the whole of this Agreement, but, rather the Agreement shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

14.   Each Party has the requisite authority to enter into this agreement on their own behalf.

15.   This Agreement may be executed in counterparts signed on varying dates.

IN WITNESS WHEREOF, this Agreement is executed as of the date and year first above indicated.

By: _____   Date: 10/2/17
    Samuel Zean

By: _____   Date: 10/21/17
    Eunice Zean

EQUIFAX INFORMATION SERVICES LLC

By: _____   Date: _____
    One of its Attorneys

5

# Exhibit C

**Form W-9**

(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Eunice K. Zean

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only one of the following seven boxes:

[X] Individual/sole proprietor or single-member LLC

[ ] C Corporation

[ ] S Corporation

[ ] Partnership

[ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

[ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

8708 62nd Ave. North

**6** City, state, and ZIP code

Brooklyn Park MN 55428

**7** List account number(s) here (optional)

Requester's name and address (optional)

*Print or type*
*See Specific Instructions on page 2.*

---

**Part I**     **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN on page 3.*

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

[  ] [  ] [  ] – [  ] [  ] – [  ] [  ] [  ] [  ]

or

**Employer identification number**

[  ] [  ] – [  ] [  ] [  ] [  ] [  ] [  ] [  ]

---

**Part II**     **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**     Signature of U.S. person ▶   *E.K.Z.*     Date ▶ 10/30/17

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X     Form **W-9** (Rev. 12-2014)

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give Form to the
requester. Do not
send to the IRS.

Print or type
See Specific Instructions on page 2.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Samuel G. Zean

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

[X] Individual/sole proprietor or single-member LLC   [ ] C Corporation   [ ] S Corporation   [ ] Partnership   [ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

[ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

**5** Address (number, street, and apt. or suite no.)

8708 62nd Ave. North

**6** City, state, and ZIP code

Brooklyn Park MN 55428

Requester's name and address (optional)

**7** List account number(s) here (optional)

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

▨▨▨ - ▨▨ - ▨▨▨▨

or

Employer identification number

▨ - ▨▨▨▨▨▨▨

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶ _____   Date ▶ 10/30/17

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding? *on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

# Exhibit D

# SETTLEMENT DISTRIBUTION FOR TRANSUNION

Zean v. Wells Fargo et. al.

| | |
|---|---|
| **Agreed Settlement Amount** | $ 500.00 |
| Attorneys' Fees Negotiated pursuant to fee shifting under 15 U.S.C. § 1681 | $ 4,5000.00 |
| Less: Attorneys' Costs to date | Waived (0.00) |
| **NET TO CLIENT** | $ 500.00 |

I do hereby approve of the above distribution of the settlement funds. I am not aware of any liens upon my settlement. If there are any existing liens and/or medical bills or if they are later asserted, I understand that I am fully responsible for such liens and/or medical bills from the proceeds of my settlement. I further hold harmless and indemnify Madgett Law, LLC and its employees from any possible liens and/or medical bills.

I acknowledge that my said attorneys have retained the sums indicated above for attorneys' fees and for attorneys' costs advanced on my behalf.

I further acknowledge that my claim has been handled pursuant to my direction and to my satisfaction. Madgett Law, LLC represents that this settlement was is negotiated on behalf of a legal assistance company dedicated to serving low to moderate income individuals. Client approved the net to client prior to entering into the settlement agreement. Madgett Law negotiated its fee under statutory fee shifting laws and without direct input from the client.

I also acknowledge that I have been advised to seek the assistance of a tax professional in regard to the tax implications that this settlement may have on my income taxes.

DATED: **3/16/2018**

_____
Client Name



**SCHUCKIT**
**& ASSOCIATES** PC
ATTORNEYS AT LAW

4545 Northwestern Drive | Zionsville, IN 46077
OFFICE 317.363.2400 | FAX 317.363.2257 | schuckitLAW.com

December 6, 2017


David J.S. Madgett, Esq.
Madgett Law
619 South Tenth Street, Suite 301
Minneapolis, MN 55404

> **RE:** ***Samuel & Eunice Zean vs Wells Fargo Bank, N.A., et al.***
> U.S. District Court, District of Minnesota
> Case No. 0:17-cv-3817-JNE-HB

> **RE:** ***Samuel Zean vs. Trans Union, LLC, et al.***
> U.S. District Court, District of Minnesota
> Case No.: 0:17-cv-05117-WMW-KMM

Dear David:

Enclosed please find a Settlement Agreement And Release ("Agreement"), Stipulations Of Dismissal With Prejudice Between Plaintiff's And Defendant Trans Union, LLC Only ("Stipulations"), and proposed Orders Of Dismissal With Prejudice Between Plaintiff And Defendant Trans Union, LLC Only in the above-referenced matter.

Please review these documents. If they are satisfactory, kindly have the Agreement and Stipulations executed where provided and returned to our office. Upon receipt of the signed original documents, we will forward the Agreement to our client for execution and file the Stipulations with the Court.

In order to expedite our client's processing of the settlement check, please return signed W-9s for your clients and your Firm to my paralegal, Michele Pate, either by fax at 317-363-2257, or by e-mail at mpate@schuckitlaw.com, at your earliest convenience. Please also advise how the check should be made payable.

We will provide you with a fully executed copy of the Agreement once it has been returned to us by Trans Union.

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is made and entered by and between SAMUEL ZEAN AND EUNICE ZEAN ( "Plaintiffs") and TRANS UNION, LLC ("Trans Union") (Plaintiffs and Trans Union, collectively, the "Parties").

### BACKGROUND

A.    Plaintiffs have pending civil actions in the United States District Court, District of Minnesota,   Case   Nos.   0:17-cv-03817-JNE-HB   and   0:17-cv-05117-WMW-KMM   (the "Lawsuits").

B.    It is the desire of the Parties to resolve all disputes, asserted or unasserted, arising out of, or in any way related to any acts, failures to act, omissions, facts, events, misrepresentations, transactions, occurrences, or other matters set forth, alleged, embraced by, or otherwise referred to at any time in the Lawsuits.

NOW, THEREFORE, in consideration of the mutual covenants, promises and agreements contained in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

### TERMS OF AGREEMENT

1.    Nothing contained herein is to be construed as an admission by any of the Parties with respect to the claims asserted in the Lawsuits.  The Parties agree that they have entered into this Agreement in compromise of disputed claims to avoid further expense and protracted litigation, and that such compromise is not an admission of any liability or wrongdoing by any of the Parties.

2.    The Parties agree to settle the Lawsuits, and all other disputes between them that could have been asserted in the Lawsuits against Trans Union for a total payment to Plaintiffs of Five Thousand and no/100 Dollars ($5,000.00), inclusive of all costs and attorneys' fees (the "Settlement Amount").  This settlement is between Plaintiffs and Trans Union only.

3.    The Parties agree to jointly cause to be filed agreed orders and/or stipulations of dismissal of the Lawsuits, *with prejudice*, as settled, with each Party bearing its own costs and attorneys' fees, all of the claims advanced by Plaintiffs against Trans Union.

4.    Except for the rights and obligations created by this Agreement, Plaintiffs, for themselves, their heirs, executors, administrators, successors and assigns, hereby release and forever discharge Trans Union, its parents, subsidiaries and affiliated companies, insurers, and each of its respective current, former and future agents, servants, officers, directors, employees, shareholders, attorneys, successors and assigns, none of whom admit any liability but all of whom expressly deny any liability, from any and all claims, demands, damages, actions, causes of action

or suits of any kind or nature, known or unknown, which Plaintiffs had, now have, or may have, on account of, arising out of, based upon or in any manner connected with, any matter, cause or thing whatsoever at any time up to and including the date of execution of this Agreement, including, but not limited to, any claim for attorneys' fees or costs or any claim based directly or indirectly upon facts, events, transactions or occurrences related, alleged, embraced by or otherwise referred to at any time in the Lawsuits or which could have been asserted in the Lawsuits or which relate in any manner to Plaintiffs' credit history information as reported by Trans Union, or the furnishing of such information by Trans Union to any third parties, prior to the execution of this Agreement.

5.      Plaintiffs acknowledge that they have reviewed the copies of their Trans Union Consumer Disclosures, dated December 1, 2017, attached hereto as **Exhibit A** and **Exhibit B** respectively (the "Disclosures") and Plaintiffs agree that all information contained within the Disclosures is accurate and will not provide the basis for any future claims against Trans Union.

6.      Plaintiffs and their counsel signing below agree not to disclose or cause to be disclosed directly or indirectly, to any other person, other than Plaintiffs' own legal or financial advisors, or as required by law, any information regarding the terms of, or circumstances underlying, this Agreement. Plaintiffs and their counsel signing below agree that it is a breach of this Agreement to publicize, in any form, any charge or claim which is the subject of this Lawsuits and which relates to Plaintiffs, including alleged unlawful conduct by Trans Union or any of its respective employees, officers, directors, agents or attorneys, consistent with the general release contained in this Agreement.

7.      Plaintiffs and Plaintiffs' counsel agree to execute and return IRS Form W-9s before Trans Union is required to tender the Settlement Amount.

8.      This Agreement is binding upon and inures to the benefit of each of the Parties, and their respective heirs, next of kin, executors, administrators, successors, assigns, officers, directors, shareholders, employees and agents.

9.      The undersigned have carefully read and do understand this Agreement. The undersigned agree voluntarily and with informed consent to this Agreement.

10.      If any provision of this Agreement shall be held invalid by operation of law or by any court of competent jurisdiction, the remainder of this Agreement shall remain in full force and effect, and may be independently enforced to the fullest extent permitted by law.

11.      Plaintiffs agree that Trans Union may recover any and all reasonable attorneys' fees, costs, and expenses incurred in enforcing any term of this Agreement or for breach thereof in addition to any other damages to which Trans Union may be entitled.

12.      This Agreement contains the entire agreement of the Parties and supersedes any and all prior negotiations, agreements or understandings, written or oral with respect to the settlement of these matters. Each Party warrants to the other that no promises or inducements for this Agreement have been made except as herein set forth.

13.    This Agreement is the result of negotiations between the Parties and no Party shall be deemed to be the drafter of this Agreement. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party.

AGREED AND ENTERED INTO AS OF THE EARLIEST DATE INDICATED BELOW.

**"Plaintiffs"**                                                                 **"Trans Union"**

                                                                                TRANS UNION, LLC

_____                        By:_____
Samuel Zean                                                            Its Authorized Representative

_____1/10/18_____                        _____
Date                                                                        Date

_____
Eunice Zean

_____1/10/18_____
Date

**APPROVED AS TO FORM AND AGREED TO AS TO PARAGRAPH 6:**

_____                        _____
David J.S. Madgett, Esq.                                        Heather M. Shumaker, Esq.
Madgett & Peterson, LLC                                        Schuckit & Associates, P.C.
619 South Tenth Street, Suite 301                          4545 Northwestern Drive
Minneapolis, MN 55404                                          Zionsville, IN 46077
Telephone: (612) 470-6529                                    Telephone: (317) 363-2400
E-Mail: dmadgett@madgettlaw.com                        Fax: (317) 363-2257
                                                                                E-Mail: hshumaker@schuckitlaw.com
*Counsel for Samuel Zean and Eunice Zean*
                                                                                *Counsel for Trans Union, LLC*

# Exhibit E

# Zean v. Wells Fargo et. al.

# SETTLEMENT DISTRIBUTION FOR EXPERIAN

| | |
|---|---|
| **Agreed Settlement Amount** | $ 500.00 |
| Attorneys' Fees Negotiated pursuant to fee shifting under 15 U.S.C. § 1681 | $ 2,500.00 |
| Less: Attorneys' Costs to date | Waived (0.00) |
| **NET TO CLIENT** | $ 500.00 |

I do hereby approve of the above distribution of the settlement funds. I am not aware of any liens upon my settlement. If there are any existing liens and/or medical bills or if they are later asserted, I understand that I am fully responsible for such liens and/or medical bills from the proceeds of my settlement. I further hold harmless and indemnify Madgett Law, LLC and its employees from any possible liens and/or medical bills.

I acknowledge that my said attorneys have retained the sums indicated above for attorneys' fees and for attorneys' costs advanced on my behalf.

I further acknowledge that my claim has been handled pursuant to my direction and to my satisfaction. Madgett Law, LLC represents that this settlement was is negotiated on behalf of a legal assistance company dedicated to serving low to moderate income individuals. Client approved the net to client prior to entering into the settlement agreement. Madgett Law negotiated its fee under statutory fee shifting laws and without direct input from the client.

I also acknowledge that I have been advised to seek the assistance of a tax professional in regard to the tax implications that this settlement may have on my income taxes.

DATED: **3/16/2018**

_____
Client Name

## SETTLEMENT AGREEMENT
## AND RELEASE

This Settlement Agreement and Release ("Agreement") is made this 27th day of February, 2018, by and between Samuel Gaygbou Zean and Eunice Korpo Zean ("Plaintiffs") and Experian Information Solutions, Inc. ("Experian") (collectively, the "Parties").

## RECITALS

WHEREAS, there is now pending in the United States District Court for the District of Minnesota, an action captioned Samuel Zean and Eunice Zean v. Experian Information Solutions, Inc., et al., Case No. 0:17-cv-03817-JNE-HB in which Plaintiffs allege that Experian is liable for, among other things, reporting certain allegedly inaccurate information in their Experian credit report (the "Lawsuit");

WHEREAS, it is the desire of the Parties to resolve all disputes, asserted or unasserted, arising out of, or in any way related to any acts, failures to act, omissions, misrepresentations, facts, events, transactions, occurrences or other matters set forth, alleged, embraced by, or otherwise referred to at any time in the Lawsuit;

NOW THEREFORE, in consideration of the Recitals and mutual promises contained herein, and for other good and valuable consideration hereby deemed received, the Parties agree as follows:

## TERMS OF AGREEMENT

1.      Except for the rights and obligations created by this Agreement, Plaintiffs for themselves, their heirs, executors, administrators, successors and assigns, hereby releases and forever discharges Experian, and its agents, servants, officers, directors, employees, shareholders, parents, subsidiaries, affiliates, attorneys, successors and assigns, none of whom admit any liability but all expressly deny liability, from any and all claims, demands, damages,

actions, causes of action or suits of any kind or nature, known or unknown, now existing which
are based directly or indirectly upon facts, events, transactions or occurrences related to, alleged,
embraced by or otherwise referred to at any time in the Lawsuit.

2.      The Parties hereto further agree that this Agreement has been fully read and
understood by them, and that each of them has received independent legal advice from his or her
or its respective attorney(s) as to the effect and import of its provisions. The Parties further agree
that this Agreement is being entered into for the express purpose and intention of making and
entering into a full and final compromise, adjustment and settlement of all claims which were or
could have been asserted in the Lawsuit, whether or not referred to therein, and that no party to
this Agreement is the prevailing party, and that no party has the right to collect from the other
party his or its costs, disbursements and/or attorneys' fees incurred in relation to the Lawsuit.

3.      Plaintiffs warrant and represent that there has been no assignment, sale or transfer,
by operation of law or otherwise, of any claim, right, or interest released herein.  If in fact
Plaintiffs have assigned, sold, or transferred, by operation of law or otherwise, any claim, right,
or interest released herein, and any such claim, right, or interest is asserted against Experian, then
Plaintiffs agree to indemnify, defend and hold harmless Experian from any claim, liability, or
expense which may be incurred as a result of the assertion of any such claim, right, or interest.

4.      This Agreement shall in no event be construed as or be deemed to be evidence of
an admission or concession on the part of Experian of any claim, fault, liability or damages
whatsoever.  Experian denies any and all wrongdoing of any kind whatsoever in connection with
the Lawsuit and does not concede any infirmity in the defenses which it has asserted or intends
to assert. The Parties have reached the agreement reflected herein in order to avoid further

expense, inconvenience and delay, and to dispose of what otherwise would be extremely expensive, burdensome and protracted litigation.

5.    Each Plaintiff has reviewed a copy of his or her Experian credit file dated February 27, 2018, a copy of each is attached hereto as Exhibit A and Exhibit B.  Plaintiffs state that all information contained in their respective Experian credit file is accurate, with the exception of the following account: Wells Fargo (account number: 9360487507212), which appears on both Exhibit A and Exhibit B.  Plaintiffs agree to release Experian from liability for its reporting of the Wells Fargo account, and further agree to dispute these accounts directly with the creditor.  Plaintiffs agree that Experian may continue to report the Wells Fargo account, as reflected in Exhibit A and Exhibit B, in its normal course of business pursuant to the federal Fair Credit Reporting Act and any other applicable federal and/or state laws, until such time as the creditor requests such information to be updated, revised or removed.

6.    After receipt of a fully executed IRS Form W-9 from each Plaintiff and from Plaintiffs' attorneys, Experian agrees to make a lump sum payment of $3,000.00 (Three Thousand Dollars) to Plaintiffs by delivery of a check or draft made payable to "Madgett Law Client Trust" sent to Madgett Law, LLC, 619 S. 10th St. Minneapolis, MN 55404.

7.    Within three (3) business days of receiving such payment, Plaintiffs agree to file a stipulation of dismissal with prejudice of the Lawsuit as to Experian or to file such other papers as are necessary to terminate the proceeding against Experian.  Plaintiffs further agree to provide Experian with copies of all such papers including evidence of the final Order of Dismissal.

8.    The Parties agree that this Agreement constitutes a good faith settlement of the Lawsuit and acknowledge that it is entered into freely and voluntarily.

9.      Unless otherwise required by law or court order, Plaintiffs agree to keep this Agreement confidential, and not disclose the contents hereof; except that, when necessary to assert a due legal right, Plaintiffs may file this Agreement with a court of competent jurisdiction under seal so that the contents are not revealed beyond disclosure to duly authorized court personnel such as judges and court clerks.

10.     This Agreement constitutes the sole and entire agreement between Plaintiffs and Experian, and supersedes all prior agreements, negotiations, and discussions between the Parties with respect to the subject matter covered hereby.  Plaintiffs and Experian acknowledge that, in entering into this Agreement, they are not relying upon any representations or warranties made by anyone other than those terms and provisions expressly set forth in this Agreement.  It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing, duly executed by authorized representatives of Plaintiff and Experian, respectively.  The Parties further acknowledge and agree that they will make no claim at any time or place that this Agreement has been orally supplemented, modified, or altered in any respect whatsoever.

11.     This Agreement is being made in and shall be deemed to be performed in the State of Minnesota and shall be governed by, construed, and enforced in accordance with the laws of the State of Minnesota without giving effect to the provisions, policies, or principles thereof relating to choice of law or conflict of laws.  Each of the Parties hereby consents to the jurisdiction of the state and federal courts located in the State of Minnesota with respect to any dispute relating to or arising out of this Agreement.

12.     In any action to enforce the terms of this Agreement, including any action to recover damages for any violations herein including the confidentiality provisions of Paragraph 9

above, the prevailing party shall be entitled to recover reasonable attorneys' fees and disbursements in addition to costs of suit.

13.    Should any provision of this Agreement be held invalid or illegal, such invalidity or illegality shall not invalidate the whole of this Agreement, but rather the Agreement shall be construed as if it did not contain the invalid or illegal provision, and the rights and obligations of the Parties shall be construed and enforced accordingly.

14.    This Agreement may be executed in counterparts.

IN WITNESS WHEREOF, this Agreement is executed as of the date and year first indicated above.

_____
Samuel Zean

_____
Eunice Zean

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF Minnesota          )

COUNTY OF Hennepin          )

Subscribed and sworn to (or affirmed) before me on this 16th day of March , 2018, by Samuel & Eunice , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

My commission expires: 1/31/19

_____
Notary Public

DAVID JOHN SCHMIDT MADGETT
Notary Public - Notarial Seal
My Commission Expires
January 31, 2019

Experian Information Solutions, Inc.,
an Ohio corporation

By: _____
    Ann Sterling