UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Samuel Zean,

                Plaintiff,

v.

Comcast Broadband Security, LLC;
and Southwest Credit Systems, L.P.,

                Defendants.

Case No. 17-cv-5117 (WMW/KMM)

**ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

---

Defendants move to compel arbitration and to stay the proceedings in this matter pending arbitration. (Dkts. 27, 30.) Because Plaintiff is contractually obligated to arbitrate this dispute, the Court grants Defendants' motions.

## BACKGROUND

Plaintiff Samuel Zean commenced this lawsuit to dispute a debt. He alleges, among other things, that the debt-collection efforts of Defendants Comcast Broadband Security, LLC, and Southwest Credit Systems, L.P., violated certain consumer protection laws. The parties dispute both the commencement date and the terms of their contractual relationship. Zean argues that he accepted Comcast's offer for residential Internet service via telephone on February 26, 2016. According to Zean, this telephonic interaction formed "a valid contract for services" that addressed only "the price, service speed, and duration of [the] agreement" and did not include "any other terms or conditions." Zean's complaint alleges, however, that he entered a 12-month "Internet Service Contract" with Comcast on March

7, 2016. And it is undisputed that Zean paid Comcast for residential Internet service and installation in March 2016.

According to Comcast, its relationship with Zean commenced in March 2016 and that relationship is governed by the Comcast Agreement for Residential Services (Subscriber Agreement). The Subscriber Agreement provides Comcast's terms and conditions, including those governing billing, fees for installation and equipment rental, and cancellation of service. As part of Comcast's "routine and regular business practice," Comcast technicians provide the Subscriber Agreement to customers during installation and "direct customers to read and accept the Subscriber Agreement." The Subscriber Agreement provides that a customer accepts its terms by using Comcast's Internet services after activation.

The Subscriber Agreement also provides, on its first page, that it "**CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS [A CUSTOMER'S] RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICE(S).**" (Emphasis in original.) The arbitration provision in Section 13 states that "[a]ny Dispute involving you and Comcast shall be resolved through individual arbitration." The Subscriber Agreement defines a "dispute" as "any claim or controversy related to Comcast." A customer may opt out of the arbitration provision by informing Comcast in writing within 30 days of the customer's Internet activation. Zean sent Comcast such an opt-out letter, dated December 22, 2016, nine months after the installation and activation of Zean's Internet service.

Zean alleges that Comcast erroneously charged him for an August 2016 technical-support visit arising from Comcast's attempts to resolve Internet-connectivity

2

issues. Comcast subsequently transferred the purported debt to Southwest for collection. Despite his protests, Zean alleges, both Comcast and Southwest used an automated telephone dialing system to call Zean in their efforts to collect the debt. Southwest also reported the debt to Trans Union, LLC,[1] and the debt appeared on Zean's credit report. Zean seeks declaratory relief stating that he does not owe the purported debt; alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*; and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*; and seeks damages in tort for invasion of privacy and defamation.

## ANALYSIS

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, requires the enforcement of written agreements to arbitrate disputes and reflects a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[C]ontract provisions directing arbitration shall be enforceable in all but limited circumstances." *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003). A motion to compel arbitration must be granted if there is a valid arbitration agreement between the parties and the dispute falls within the scope of the arbitration agreement. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198-99 (8th Cir. 2008); *see also* 9 U.S.C. § 4. Because the parties rely on matters outside the pleadings, the Court must determine whether, when the evidence is viewed in the light most favorable to the nonmoving party, a genuine dispute

---

[1] Zean stipulated to the dismissal of Trans Union, LLC, on February 21, 2018.

of material fact exists as to the propriety of arbitration. *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741-42 (8th Cir. 2014).

## I. Comcast's Motion to Compel Arbitration

The crux of the question before the Court is whether the parties' contractual relationship includes a valid arbitration agreement and, if so, whether the present dispute falls within the scope of that agreement. Comcast argues that Section 13 of the Subscriber Agreement expressly requires Zean to arbitrate his claims against Comcast. Zean counters that his contract with Comcast includes only those terms that Zean agreed to during the February 26 telephone conversation with a Comcast representative, which do not include an arbitration provision.

### A. Existence of a Valid Arbitration Agreement

State contract law governs whether the parties have entered into a valid agreement to arbitrate a particular matter. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). Under Minnesota law, contract formation requires the communication of a specific and definite offer, acceptance of that offer, and consideration.[2] *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626-27 (Minn. 1983). When determining whether the parties have entered into a valid and enforceable contract, courts evaluate the objective conduct of the parties. *Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 221 (Minn. 1962). A valid and enforceable contract does not exist when an essential term remains uncertain. *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992).

---

[2] The parties do not dispute the application of Minnesota law.

Zean and Comcast do not dispute that a valid contract was formed. Instead, the parties dispute the date of commencement and the terms of their contractual relationship. Zean argues that his contractual relationship with Comcast commenced during a February 26 telephone conversation between Zean and a Comcast representative. According to Zean, that conversation did not include any discussion of an arbitration provision and, for that reason, Zean's contract with Comcast does not include such a provision. But Zean's complaint does not allege that his contract with Comcast commenced on February 26. Instead, Zean's complaint alleges that he entered into a one-year contract with Comcast on March 7, 2016—the same date that Comcast installed and activated Zean's Internet service.

As to the terms of the contract, Comcast submits the declarations of Nicole Patel, who serves as Comcast's Director of Regulatory Compliance.[3] Patel declares that Zean received the Subscriber Agreement via e-mail in March 2016, and that it is Comcast's routine and regular business practice for Comcast technicians to provide the Subscriber Agreement to customers during the installation of Internet services. Patel also declares that Zean affirmatively acknowledged the terms of the Subscriber Agreement, and that the

---

[3] Zean objects to the Patel declarations, arguing that Patel lacks personal knowledge and that her statements are inadmissible hearsay. Comcast counters that Patel explains the basis of her personal knowledge and that the exhibits Patel attaches to her declarations are admissible evidence of Comcast's routine business practices, which are kept in the course of Comcast's regularly conducted business activities. Rule 406, Fed. R. Evid., permits the admission of evidence of an organization's routine business practice "regardless of whether it is corroborated," and Rule 803(6), Fed. R. Evid., exempts regularly conducted business activity from the hearsay rule. Because Patel declares that she works for Comcast, that her declarations are based on her personal knowledge, and that the exhibits attached to her declarations were gathered in the course and scope of her employment with Comcast, Zean's objections are overruled.

Subscriber Agreement is available online. These averments support the determination that Zean both received and accepted the terms of the Subscriber Agreement. *See, e.g.*, *Schwartz v. Comcast Corp.*, 256 F. App'x. 515, 518 (3d Cir. 2007) (determining customer received subscriber agreement based, in part, on evidence detailing Comcast's routine methods of providing the subscriber agreement to its customers). Zean's affirmative conduct also indicates that he accepted the Subscriber Agreement. Zean paid installation and modem-rental fees shortly after Comcast installed his Internet service. Zean also wrote to Comcast nine months after the installation of his Internet service, seeking to opt out of the Subscriber Agreement's arbitration provision. These actions conform with the terms of the Subscriber Agreement and are inconsistent with Zean's argument that his contract with Comcast included only terms addressing the price, duration, and speed of his Internet service.

The Subscriber Agreement also contains numerous terms that are essential to a contract for Internet service, including terms governing the use of the Internet service, the ownership and leasing of equipment, cancellation, and dispute resolution. For this reason, the limited nature of Zean's purported contractual terms is objectively unreasonable. *See id.* at 519-20 (rejecting plaintiff's asserted terms of Internet contract as objectively unreasonable because no "reasonable adult" would accept plaintiff's position). Moreover, the Subscriber Agreement contains a merger clause stating that the Subscriber Agreement "replace[s] any and all prior . . . verbal agreements." This merger clause refutes Zean's contention that contract formation occurred orally during a telephone conversation on February 26. *See Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1456 (D. Minn.

1996) (applying Minnesota law and explaining that a party cannot vary the terms of a written agreement by relying on a prior or contemporaneous oral agreement).

There is no genuine dispute of material fact that Zean's relationship with Comcast commenced in March 2016 and is governed by the terms and conditions of the Subscriber Agreement, which includes an arbitration provision.

### B. Scope of the Arbitration Agreement

Comcast next argues that the Subscriber Agreement's arbitration provision is broad and encompasses Zean's claims against Comcast. Zean does not address the scope of the arbitration provision, apparently resting on his contention that he is not bound by the Subscriber Agreement.

Arbitration is mandatory when "the underlying factual allegations simply touch matters covered by the arbitration provision." *Zetor N. Am. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (internal quotation marks omitted). Arbitration provisions are broadly enforced "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *3M Co.*, 542 F.3d at 1199 (internal quotation marks omitted); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (explaining that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). As the party resisting arbitration, Zean must prove that the claim at issue is unsuitable for arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).[4]

---

[4] Citing *First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995), Zean argues that it is Comcast's "high burden" to provide "clear and unmistakable evidence" that the parties agreed to arbitration. This contention lacks merit. *First Options* addresses when an arbitrator should decide whether a dispute is subject to arbitration. 514 U.S. at 943.

Section 13 of the Subscriber Agreement requires the arbitration of "any claim or controversy related to Comcast," including but not limited to "claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise." Zean's complaint seeks declaratory relief to resolve a purported debt that he owes to Comcast. The complaint also alleges that Comcast's actions to collect that debt violated certain consumer-protection statutes and seeks damages in tort. These claims for contractual and statutory relief fall squarely within the Subscriber Agreement's arbitration provision. *See, e.g.*, *Wold v. Dell Fin. Servs. L.P.*, 598 F. Supp. 2d 984, 988-89 (D. Minn. 2009) (compelling arbitration of alleged violation of Fair Credit Reporting Act); *see also Jackson v. Comenity Bank*, No. 16-1133, 2016 WL 6093477, at *1 (D. Minn. Oct. 18, 2016) (compelling arbitration of alleged violation of Telephone Consumer Protection Act).

In summary, the Subscriber Agreement governs the parties' contractual relationship and includes a valid arbitration provision that encompasses Zean's claims against Comcast. For this reason, the Court grants Comcast's motion to compel arbitration.

## II. Southwest's Motion to Compel Arbitration

Southwest also moves to compel arbitration under the terms of the Subscriber Agreement.[5] Southwest is not a party to the Subscriber Agreement. But Southwest argues that Zean must submit his claims against Southwest to arbitration because the Subscriber

---

Contrary to Zean's argument, *First Options* affirms that, absent evidence that the parties clearly intended an arbitrator to resolve the question of arbitrability, it is the district court's duty to resolve the question. *Id.* at 944-46.

[5] Southwest filed its motion to compel arbitration on January 2, 2018. Comcast filed an untimely response to the motion on January 29, 2018. For this reason, the Court declines to consider Comcast's submission when addressing Southwest's motion to compel arbitration. *See* LR 7.1(c)(2) (permitting 21 days to file a response brief).

Agreement governs Zean's allegations, which do not clearly differentiate between the actions of Comcast and Southwest. Zean counters that Southwest's motion is premature because the contours of the relationship between Southwest and Comcast will be determined through discovery.

When "the relationship between the signatory and nonsignatory defendants is sufficiently close," a nonsignatory may enforce an arbitration agreement to give effect to the agreement. *CD Partners v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005). Similarly, a nonsignatory may compel arbitration when a party subject to an arbitration agreement alleges "substantially interdependent and concerted misconduct" between the nonsignatory and a signatory defendant. *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010) (internal quotation marks omitted); *see also CD Partners*, 424 F.3d at 799 (recognizing that a nonsignatory may compel arbitration when "the relationship of the persons, wrongs and issues involved is a close one").

Zean is bound by the terms of the Subscriber Agreement, which requires the arbitration of "any claim or controversy related to Comcast." *See* Part I, *supra*. Zean's complaint disputes a debt to Comcast, asserts that Comcast sold the debt owed to Southwest, and alleges that the collection efforts of Comcast and Southwest violated certain consumer-protection statutes. Zean's complaint frequently refers to Comcast and Southwest collectively as "Defendants," and Zean alleges that Defendants knowingly and willfully committed unlawful acts. Both Comcast and Southwest assert that the Subscriber Agreement's provisions that govern debt collection expressly permit the conduct undertaken. Because there is a sufficient nexus between the Subscriber Agreement and the alleged concerted misconduct of Southwest and Comcast, Southwest—a nonsignatory—

may enforce the arbitration provision of the Subscriber Agreement. *See PRM Energy*, 592 F.3d at 836 (affirming order that granted nonsignatory's motion to compel arbitration because plaintiff's allegations of concerted misconduct were sufficiently intertwined with the underlying agreement to arbitrate). Accordingly, the Court grants Southwest's motion to compel arbitration.

Defendants' motions to stay this litigation pending arbitration also are granted, in light of the Court's decision to grant Defendants' motions to compel arbitration. *See* 9 U.S.C. § 3 (stating that a district court shall stay an action until the completion of arbitration in accordance with the terms of the agreement); *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) (recognizing that the FAA requires a stay pending arbitration unless it is clear that arbitration will resolve the entire controversy).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Comcast Broadband Security, LLC's motion to compel arbitration and to stay action, (Dkt. 27), is **GRANTED**;

2. Defendant Southwest Credit Systems, L.P.'s motion to compel arbitration and to stay action, (Dkt. 30), is **GRANTED**; and

3. This matter is stayed pending the completion of arbitration. The parties shall file updates addressing the status of arbitration by the 15th of each month and shall notify the Court no later than 14 days after the conclusion of arbitration.

Dated:  August 1, 2018                           s/Wilhelmina M. Wright
                                                 Wilhelmina M. Wright
                                                 United States District Judge